## STATE OF CONNECTICUT *v.* NOEL MENDOZA
### (AC 29547)

DiPentima, Gruendel and Lavery, Js.

Argued September 16, 2009—officially released February 9, 2010

*Andrew S. Liskov*, special public defender, for the appellant (defendant).

*Leonard C. Boyle*, deputy chief state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *Marc G. Ramia*, assistant state's attorney, and *Melissa Patterson*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Noel Mendoza, appeals from the judgment of conviction, rendered after a jury trial, of criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1).[1] He claims that the trial court abused its discretion in permitting the state to reopen its case-in-chief and improperly denied his motion for a judgment of acquittal. In addition, the defendant alleges a double jeopardy violation. We affirm the judgment of the trial court.

The following undisputed facts are relevant to our resolution of the present appeal. In the early hours of June 20, 2006, the defendant's girlfriend, Dianna DeJesus, sat on her front porch at 63 Arch Street in Meriden. At that time, a dispute arose between the defendant and another individual on the property, and

---

[1] General Statutes § 53a-217 (a) (1) provides: "A person is guilty of criminal possession of a firearm or electronic defense weapon when such person possesses a firearm or electronic defense weapon and (1) has been convicted of a felony . . . ."

the defendant brandished a handgun. Frightened, DeJesus fled inside her residence. She then heard two gunshots, which she reported to the police via a 911 call. Jason Smith, whose residence abuts that of DeJesus, similarly contacted the police after hearing gunshots and observing a man on the concrete retaining wall that separates the properties. Officers from the Meriden police department responded to the scene, where they found two nine millimeter shell casings on the steps leading to the rear porch of DeJesus' residence and a Kel-Tec P-11 nine millimeter semiautomatic pistol with live ammunition in the magazine in a doghouse at the rear of DeJesus' property.

The defendant thereafter was arrested and charged, by amended information dated September 12, 2007, with criminal possession of a firearm in violation of § 53a-217 (a) (1) and reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a). The state further filed a part B information charging the defendant with being a persistent serious felony offender in light of two prior convictions for the sale of narcotics in violation of General Statutes § 21a-277 (a).

A jury trial commenced on September 18, 2007. As part of its case-in-chief, the state presented the testimony of the Meriden police officers who discovered the firearm and shell casings on the DeJesus property. The state also offered the testimony of Gerard Petillo, a forensic firearm examiner at the department of public safety. Petillo testified that testing confirmed that the recovered firearm was operable. In addition, both DeJesus and Smith testified, and the state introduced approximately two dozen exhibits into evidence. On September 19, 2007, the state rested, and the defendant immediately moved for a judgment of acquittal, stating that the state had not presented "evidence sufficient to support [the case] going to the jurors." The state

objected, and a bench conference followed. Immediately thereafter, the following colloquy ensued:

"The Court: All right. The court is going to reserve decision on the [motion for a judgment of acquittal]. I'm going to review my notes. In the meantime, [counsel], [I] just excused the jury and [the state] rested about five minutes ago. [The prosecutor] indicated there was the issue . . . which had been placed on the record earlier on, I forget what day, regarding [the] defendant's prior felony conviction with regard to the first count as a possible stipulation and you wish to be heard on that?

"[The Prosecutor]: Yes, Your Honor. I did approach counsel prior to the start of trial with regard to the element of count one[2] regarding the defendant previously being convicted of a felony. Subsequent to that . . . the state indicated on the record, again, that the state was seeking a stipulation. Counsel indicated that he would consider that and discuss that with his client, and that issue was never broached again. So, if defense counsel's willing to stipulate, there won't be any issue at this point. If defense is not willing to stipulate, the state's going to make a motion to reopen its case so that it may satisfy that particular prong of count one.

"The Court: [Defense counsel], my recollection is . . . that matter, I believe, was placed on the record. [The prosecutor] just noted that that matter has not been, apparently, resolved prior to the time [he] just rested, but it had been broached. It doesn't come as a surprise. What . . . do you have to say?

"[Defense Counsel]: Well, Your Honor, the state is correct, Your Honor. They did . . . approach me in regards to my client's willingness to stipulate to that issue. I indicated to them . . . I couldn't make that

[2] Count one of the information charged the defendant with criminal possession of a firearm in violation of § 53a-217 (a) (1). See footnote 1 of this opinion.

decision until I approached my client and consulted with him and gave him my opinion. Throughout the, I guess, preparations for trial and preparations for evidence, I neglected to talk to my client about that issue, Your Honor. If I could, Your Honor, speak to him over the course of this evening and get back to the court tomorrow morning and to [the prosecutor], I'm pretty sure we'd be able to resolve it.

"The Court: All right."

The court thus reserved its decision on the motion and dismissed the jury for the day.

The next morning, the court addressed the defendant's motion for a judgment of acquittal outside the presence of the jury. After hearing from the parties, the court granted the motion with respect to the reckless endangerment charge. The court then shifted its attention to the criminal possession of a firearm charge, noting that the state filed a motion "to reopen its case-in-chief in order to offer evidence of the defendant's felony status" that morning. During argument thereon, the state maintained that it "inadvertently rested prior to providing any evidence of the defendant's convicted felon status" and emphasized that "the defendant did not alert the state to the evidentiary gap" concerning his prior felony convictions. The state opined that "the defendant's felony status really is not a contested issue," stating that it earlier had filed a part B information detailing his prior convictions and "had ordered certified copies of conviction for the defendant's felony convictions . . . ." In addition, the state averred that it had placed on the record the possibility of a stipulation regarding the defendant's prior convictions at the outset of trial.[3] In response, defense counsel conceded that

[3] On appeal, the state concedes that the transcripts before us contain no mention of that possible stipulation. At the same time, defense counsel acknowledged that such a discussion had transpired.

"mere inadvertence" caused the evidentiary gap and further acknowledged that "if the state had not inadvertently forgotten . . . to introduce [that] evidence, there would be no prejudice [to the defendant]." Defense counsel nevertheless contended that the state's motion to reopen its case-in-chief should be denied. Relying on the decision of our Supreme Court in *State v. Allen*, 205 Conn. 370, 533 A.2d 559 (1987), counsel contended that "the defendant doesn't have to specifically state on the record what . . . is lacking in the state's evidence, so long as he raises the motion for a judgment of acquittal . . . and that becomes the trigger . . . to alert the state . . . to the deficiency . . . in their evidence . . . ."

In considering the arguments of counsel, the court emphasized that when the state originally expressed its intention to seek to reopen the case to introduce evidence of the defendant's felony convictions, the defendant "did not indicate that [the felony status issue] had been a basis for your motion for a judgment of acquittal" and stated "for the record that . . . this discussion regarding the failure of the state to introduce the felony conviction occurred within . . . minutes of the state resting its case." Concluding that the defendant "did not specifically call the state's attention, nor the court's attention, to the evidentiary gap" regarding prior felony convictions, the court granted the motion to reopen "for the limited purpose of the issue of the felony convictions."

The state proceeded to offer the testimony of Virginia Hemming, a deputy clerk with the Superior Court. Hemming testified that the defendant had been convicted of a felony on January 17, 1992. The state then rested, and the defendant renewed his motion for a judgment of acquittal, which the court denied. The jury thereafter found the defendant guilty of criminal possession of a firearm. The court rendered judgment accordingly and

sentenced the defendant to a total effective term of five years incarceration. From that judgment, the defendant appeals.

I

We first consider the defendant's contention that the court abused its discretion in permitting the state to reopen its case-in-chief. Relying principally on *State* v. *Allen*, supra, 205 Conn. 370, the defendant maintains that the court improperly permitted the state to reopen its case to prove an essential element of the crime of criminal possession of a firearm. Careful examination of that precedent persuades us otherwise.

"[I]f a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is a serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided." (Internal quotation marks omitted.) *State* v. *Zoravali*, 34 Conn. App. 428, 441, 641 A.2d 796, cert. denied, 230 Conn. 906, 644 A.2d 921 (1994). "The decision to reopen a criminal case to add further testimony lies within the sound discretion of the court, which should be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . The purpose . . . is to preserve the fundamental integrity of the trial's truth-finding function." (Internal quotation marks omitted.) *State* v. *Jones*, 96 Conn. App. 634, 643, 902 A.2d 17, cert. denied, 280 Conn. 919, 908 A.2d 544 (2006). "The trial court's discretion will be reversed only upon manifest abuse of discretion or injustice." *State* v. *Zoravali*, supra, 442.

That discretion is not without limit. In the seminal case of *State* v. *Allen*, supra, 205 Conn. 370, our Supreme Court addressed an instance in which the defendant

alerted the state to a specific evidential deficiency in its case-in-chief via a motion for a judgment of acquittal, and the state thereafter moved to reopen its case-in-chief in order to rectify that deficiency. That procedural posture presented two competing concerns. On one hand, to "permit the state to reopen its case-in-chief after the defendant has pointed out in his motion for judgment of acquittal the specific particulars why the state had failed to present a prima facie case rewards the state for its 'laxity' and in practical effect turns the defendant's attorney into a prosecutorial arm of the state." Id., 375. On the other hand, "a trial is not a game of technicalities, but one in which the facts and truth are sought." (Internal quotation marks omitted.) Id., 375–76.

The *Allen* court recognized the "wide discretion enjoyed by the trial court to permit the reopening of a case after either side has rested." Id., 380. It nevertheless observed that the "precise facts and procedural posture of this case are significantly different." Id., 380–81. Expounding on that distinction, the court noted that the state in that case "conceded that the evidence presented in its case-in-chief was insufficient" and that the state "offered new evidence on reopening and did not merely offer cumulative evidence or clarify previous testimony." Id., 383. The court also distinguished its earlier decision in *State* v. *Watson*, 165 Conn. 577, 345 A.2d 532 (1973), cert. denied, 416 U.S. 960, 94 S. Ct. 1977, 40 L. Ed. 2d 311 (1974), by explaining that the defendant in *Watson* "did not file a motion for judgment of acquittal and thus the defendant was not the one responsible for pointing out the potential evidentiary gap in the state's case." *State* v. *Allen*, supra, 205 Conn. 382. Accordingly, the court reasoned that "allowing the state to reopen its case-in-chief *after the defendant has identified its shortcomings* was fundamentally unfair

to the defendant and an abuse of the trial court's discretion." (Emphasis added.) Id., 383–84.

In concluding, the court articulated its holding in plain terms: "Our holding in this case does not preclude a trial court from exercising its discretion to reopen a case. We only hold that when the state has failed to make out a prima facie case because insufficient evidence has been introduced concerning an essential element of a crime and the defendant has specifically identified this evidentiary gap in a motion for judgment of acquittal, it is an abuse of the trial court's discretion to permit a reopening of the case to supply the missing evidence." Id., 385.

The defendant in the present case maintains that *Allen* supports his claim that the court abused its discretion in permitting the state to reopen its case-in-chief. Indeed, this case is similar in certain respects to that decision. The state concedes that the evidence originally presented in its case-in-chief was insufficient as to the felony conviction element of the charged offense. In addition, the motion to reopen sought to introduce new evidence and "did not merely offer cumulative evidence or clarify previous testimony." Id., 383. At the same time, the present case is materially different from *Allen* in that the defendant here failed to specifically identify the evidentiary gap in the state's case-in-chief in moving for a judgment of acquittal. The defendant seeks to minimize the significance of that critical distinction by arguing that such specificity is unnecessary. In his view, because "the very purpose and essence of a motion for a judgment of acquittal is to serve notice of an evidentiary insufficiency in the state's case," the mere act of moving for such a judgment itself alerts the state to an evidentiary deficiency in its case. Accordingly, the defendant insists that permitting the state to

reopen its case after he moved for a judgment of acquittal on the ground that the state had not presented "evidence sufficient to support [the case] going to the jurors" amounted to an abuse of discretion.

For multiple reasons, we do not agree with the defendant. First and foremost, the plain language of *Allen* undermines his claim. The holding of *Allen* proscribing the reopening of the state's case-in-chief contained two prerequisites: (1) that the state failed to make out a prima facie case because insufficient evidence had been introduced concerning an essential element of a crime; *and* (2) that the defendant specifically identified this evidentiary gap in a motion for a judgment of acquittal. Id., 385. It is undisputed that the defendant did not specifically identify the evidentiary gap regarding his felony status in his motion for a judgment of acquittal.

In addition, our Supreme Court has interpreted its precedent in *Allen* in a manner contrary to that advocated by the defendant in this appeal. In *State* v. *Roman*, 224 Conn. 63, 616 A.2d 266 (1992), cert. denied, 507 U.S. 1039, 113 S. Ct. 1868, 123 L. Ed. 2d 488 (1993), the court explained that "[u]nless the state's offer seeks to fill an evidentiary gap in its prima facie case that was specifically called to the state's attention by the defendant's motion for acquittal; see *State* v. *Allen*, supra, [205 Conn.] 385; the trial court may permit additional evidence to be presented even though that evidence strengthens the case against the defendant." *State* v. *Roman*, supra, 71; *State* v. *Jones*, supra, 96 Conn. App. 643. The lesson of *Allen* and *Roman* is that unless the defendant specifically has identified an evidentiary gap in the state's prima facie case, the trial court retains discretion to permit the state to reopen its case-in-chief in response to a motion for a judgment of acquittal. We are bound by that precedent.[4]

[4] For clarity, we repeat that the defendant's primary argument in this appeal is that it is an abuse of discretion for a trial court *ever* to permit the state to reopen its case-in-chief when the defendant has moved for a judg-

Furthermore, a practical problem abounds with the defendant's interpretation. If the mere act of moving for a judgment of acquittal necessarily alerts the state to its evidential insufficiency, as the defendant maintains, then the trial court never could exercise its discretion in such instances. The Supreme Court in *Allen* expressly held to the contrary, stating that "[w]e reach the result in this case without interfering with a trial court's discretion to permit a reopening under appropriate circumstances in a future case"; *State* v. *Allen*, supra, 205 Conn. 381; and that "[o]ur holding in this case does not preclude a trial court from exercising its discretion to reopen a case." Id., 385.

The defendant highlights the following language from *Allen* regarding a defendant's possible silence in the face of an evidentiary gap in the state's prima facie case: "[T]he state failed to introduce any evidence as to . . . an essential element of the crime [charged]. . . . As the state conceded at oral argument before us, had the defendant remained silent until after the verdict had been rendered, the omission of this evidence would have required a judgment of acquittal either in the trial

ment of acquittal on a general allegation of evidential insufficiency. In essence, the defendant asks us to rewrite the *Allen* standard so as to eliminate the specific identification of the evidentiary gap prong of that precedent.

Although the dissent champions that request, proper regard for this court's role as an intermediate appellate tribunal mandates that we decline the defendant's invitation. It is axiomatic that the Appellate Court is "bound by Supreme Court precedent and [is] unable to modify it . . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Citation omitted; internal quotation marks omitted.) *State* v. *Smith*, 107 Conn. App. 666, 684–85, 946 A.2d 319, cert. denied, 288 Conn. 902, 952 A.2d 811 (2008); see also, e.g., *State* v. *Brown*, 73 Conn. App. 751, 756, 809 A.2d 546 (2002) ("Our Supreme Court is the ultimate arbiter of the law in this state. We, as an intermediate appellate court, cannot reconsider the decisions of our highest court."); *State* v. *Fuller*, 56 Conn. App. 592, 609, 744 A.2d 931 ("[i]t is not within our function . . . to overrule Supreme Court authority"), cert. denied, 252 Conn. 949, 748 A.2d 298, cert. denied, 531 U.S. 911, 121 S. Ct. 262, 148 L. Ed. 2d 190 (2000).

court or on appeal." (Citation omitted.) Id., 377. From
that dictum, the defendant extrapolates that "in such
circumstances . . . wherein a prima facie case is lack-
ing, it makes tactical sense for a defendant to first forgo
moving for an acquittal after the state has rested and
then decline to offer any evidence," which he describes
as a beneficial trial strategy. Risky also describes that
strategy, as it presumes that the state will decline to
seek to reopen its case-in-chief at a later point pursuant
to Practice Book § 42-35 (3).[5] To suggest that the state
would not have sought the court's permission to reopen
its case to introduce evidence of the defendant's felon
status prior to the entry of a verdict had the defendant
not moved for a judgment of acquittal is to engage in
sheer speculation and conjecture, which "have no place
in appellate review." *Narumanchi* v. *DeStefano*, 89
Conn. App. 807, 815, 875 A.2d 71 (2005).

The defendant also makes much of the mention in
*Allen* of *People* v. *Belton*, 23 Cal. 3d 516, 522, 591 P.2d
485, 153 Cal. Rptr. 195 (1979). Our Supreme Court
stated: "The California Supreme Court has recognized
that to require a defendant to state specific grounds in
support of the motion for acquittal would place the
burden upon him to point out to the prosecutor, as well
as to the court, the gaps in the prosecution's case. Such
a requirement would come perilously close to compel-
ling a defendant to aid in his own prosecution and
would lessen the prosecutor's burden to prove each
and every element of the case beyond a reasonable
doubt." (Internal quotation marks omitted.) *State* v.
*Allen*, supra, 205 Conn. 380. The defendant posits that
to specifically identify an evidentiary gap in the state's

---

[5] Practice Book § 42-35 (3) provides: "The prosecuting authority and the
defendant may present rebuttal evidence in successive rebuttals, as required.
The judicial authority for cause may permit a party to present evidence not
of a rebuttal nature, and if the prosecuting authority is permitted to present
further evidence in chief, the defendant may respond with further evidence
in chief."

case would both aid his own prosecution and implicate his sixth amendment right to effective assistance of counsel. As he argues in his appellate brief, "[w]hen a defendant actually tells the state in its motion for a judgment of acquittal about evidentiary gaps in its case-in-chief, the state will naturally know how to fill the gaps. It will then, as in the case at bar, seek to reopen its case to remedy the deficient proof." His argument misunderstands the holding of *Allen*. Under that precedent, a trial court is prohibited from granting a motion to reopen when a defendant specifically identifies in his motion for a judgment of acquittal an evidentiary gap in the state's case-in-chief concerning an essential element of a crime. Thus, *Allen* provides the very safeguard against the concerns articulated by the defendant.

The defendant's misunderstanding of *Allen* is further reflected in his argument that Practice Book § 42-40 does not require a defendant to specifically set forth the grounds for the motion for a judgment of acquittal. The proscription in *Allen* pertains not to whether the state ultimately will be permitted to reopen its case in certain circumstances but, rather, whether the trial court retains the discretion to make that determination. *Allen* plainly holds that "when the state has failed to make out a prima facie case because insufficient evidence has been introduced concerning an essential element of a crime and the defendant has specifically identified this evidentiary gap in a motion for judgment of acquittal," the trial court cannot permit the state to reopen its case to supply the missing evidence. *State* v. *Allen*, supra, 205 Conn. 385. When such specific identification is lacking, the trial court exercises its discretion to preserve the fundamental integrity of the trial's truth-finding function; *State* v. *Zoravali*, supra, 34 Conn. App. 442; in determining whether to grant a motion to reopen the state's case-in-chief. Thus, even absent a specific identification of the state's evidentiary gap in

a motion for a judgment of acquittal, a defendant still may persuade a trial court that the motion to reopen should not be granted and, likewise, may still prevail on a motion for a judgment of acquittal. Indeed, the defendant so prevailed in the present case on the reckless endangerment charge.

Because the defendant did not specifically identify the state's evidentiary gap in his motion for a judgment of acquittal, the issue properly before us is whether the trial court abused its discretion in permitting the state to reopen its case-in-chief. On the particular facts of this case, we answer that query in the negative.

The record in the present case strongly suggests that, when the defendant moved for a judgment of acquittal, the issue of his status as a felon was not contemplated. It is undisputed that the defendant did not specifically identify that evidentiary issue in moving for a judgment of acquittal. Rather, the September 19, 2007 transcript indicates that the issue of the defendant's felony status was raised by the prosecutor. As it is particularly pertinent, we again note the following colloquy between counsel and the court:

"The Court: All right. The court is going to reserve decision on the [motion for a judgment of acquittal]. I'm going to review my notes. In the meantime, [counsel], [I] just excused the jury and [the state] rested about five minutes ago. [The prosecutor] indicated there was the issue . . . which had been placed on the record earlier on, I forget what day, regarding [the] defendant's prior felony conviction with regard to the first count as a possible stipulation and you wish to be heard on that?

"[The Prosecutor]: Yes, Your Honor. I did approach counsel prior to the start of trial with regard to the element of count one regarding the defendant previously being convicted of a felony. Subsequent to that . . . the state indicated on the record, again, that the

state was seeking a stipulation. Counsel indicated that he would consider that and discuss that with his client, and that issue was never broached again. So, if defense counsel's willing to stipulate, there won't be any issue at this point. If defense is not willing to stipulate, the state's going to make a motion to reopen its case so that it may satisfy that particular prong of count one.

"The Court: [Defense counsel], my recollection is . . . that matter, I believe, was placed on the record. [The prosecutor] just noted that that matter has not been, apparently, resolved prior to the time [he] just rested, but it had been broached. It doesn't come as a surprise. What . . . do you have to say?

"[Defense Counsel]: Well, Your Honor, the state is correct, Your Honor. They did . . . approach me in regards to my client's willingness to stipulate to that issue. I indicated to them . . . I couldn't make that decision until I approached my client and consulted with him and gave him my opinion. Throughout the, I guess, preparations for trial and preparations for evidence, I neglected to talk to my client about that issue, Your Honor. If I could, Your Honor, speak to him over the course of this evening and get back to the court tomorrow morning and to [the prosecutor], I'm pretty sure we'd be able to resolve it.

"The Court: All right."

Tellingly, at no time after the issue of the evidentiary gap regarding the defendant's felony status was raised by the state did the defendant ever indicate that that gap was a basis of his motion for a judgment of acquittal, as the court specifically found in ruling on the state's motion to reopen. To the contrary, counsel for the defendant requested time to speak with his client about the stipulation regarding his felony status and expressed optimism that the issue of proof of the defendant's felony status could be resolved. That record

belies any claim, which we note that the defendant has not advanced, that his motion for a judgment of acquittal was predicated on evidential insufficiency concerning his status as a convicted felon.

Furthermore, it is significant that the state alleged, and the defendant conceded, at trial that the failure to offer evidence of the defendant's prior felony convictions was attributable to "mere inadvertence . . . ." Coupled with that uncontested fact is the fact, which the court found, that the parties during trial discussed a possible stipulation on this point. Moreover, the state reminded the court that it earlier had filed a part B information detailing the defendant's prior convictions and "had ordered certified copies of conviction for the defendant's felony convictions . . . ." See *State* v. *Dunbar*, 51 Conn. App. 313, 319, 721 A.2d 1229 (1998) (*Allen* distinguishable because state "was prepared to prove the essential element that is at issue"), cert. denied, 247 Conn. 962, 724 A.2d 1126 (1999). In such circumstances, the trial court in its discretion may permit the introduction of related evidence "at any time before the case has been decided." (Internal quotation marks omitted.) *State* v. *Zoravali*, supra, 34 Conn. App. 441. In essence, the defendant, who neither apprised the court of the specific deficiency in the state's case nor voiced any objection when that deficiency was addressed by the state on September 19, 2007, now seeks the reversal of the trial court's exercise of discretion on the basis of a deficiency beyond his contemplation at the time he moved for a judgment of acquittal. A trial, however, "is not a game of technicalities, but one in which the facts and truth are sought." (Internal quotation marks omitted.) *State* v. *Allen*, supra, 205 Conn. 375–76.

We also note that the court expressly found that the defendant "did not specifically call the state's attention,

nor the court's attention, to the evidentiary gap" regarding prior felony convictions. That factual finding is supported by the record before us. As we already have noted, the defendant did not specifically identify that evidentiary gap in moving for a judgment of acquittal. The September 19, 2007 transcript indicates that the state first raised that issue before the court. Moreover, even after the state raised the issue, the defendant did not claim that the evidentiary gap regarding his felony status was in any manner related to his motion for a judgment of acquittal. On that record, we cannot say that the court's finding was clearly erroneous.

In weighing the merits of the state's motion to reopen, the court was required to balance the defendant's interest in a fair proceeding with a trial's fundamental and ever present search for the truth. The record before us supports the court's finding that the defendant did not specifically call the state's attention, nor the court's attention, to the evidentiary gap regarding his prior felony convictions and strongly suggests that when he moved for a judgment of acquittal, the evidentiary gap as to his status as a felon was not contemplated. In addition, the defendant conceded that he had discussed a possible stipulation as to that evidentiary issue with the state at trial and further conceded that the state's failure to present evidence on that issue as part of its case-in-chief was due to mere inadvertence. At trial, the defendant acknowledged that "if the state had not inadvertently forgotten . . . to introduce [that] evidence, there would be no prejudice [to the defendant]" but nevertheless insisted that the motion to reopen should be denied. In light of the foregoing, and mindful that our standard of review is a deferential one; see, e.g., *State* v. *Perkins*, 271 Conn. 218, 252, 856 A.2d 917 (2004); we conclude that the court did not abuse its discretion in permitting the state to reopen its case

for the limited purpose of addressing the issue of the defendant's prior felony convictions.

## II

We turn next to the defendant's claim that the court improperly denied his motion for a judgment of acquittal on the criminal possession of a firearm charge. "The standard of appellate review of a denial of a motion for a judgment of acquittal has been settled by judicial decision. . . . The issue to be determined is whether the jury could have reasonably concluded, from the facts established and the reasonable inferences which could be drawn from those facts, that the cumulative effect was to establish guilt beyond a reasonable doubt. . . . The facts and the reasonable inferences stemming from the facts must be given a construction most favorable to sustaining the jury's verdict. . . . It is established case law that when a defendant challenges the sufficiency of the evidence, we apply a twofold test. We first review the evidence . . . in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn . . . the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt . . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Citation omitted; internal quotation marks omitted.) *State* v. *Hamlett*, 105 Conn. App. 862, 866, 939 A.2d 1256, cert. denied, 287 Conn. 901, 947 A.2d 343 (2008).

At the outset, we note the following procedural history pertinent to the defendant's claim. After the defendant moved for a judgment of acquittal, the court reserved its decision thereon. The state then moved to reopen its case-in-chief, which, after argument, the

court granted. At that point, the court did not decide the defendant's motion for a judgment of acquittal. Without objection by the defendant, the state proceeded to offer the testimony of Hemming, who testified that the defendant had been convicted of a felony on January 17, 1992. The state then rested, and the defendant renewed his motion for a judgment of acquittal, which the court denied.

On appeal, the defendant does not maintain that the evidence presented in the state's case-in-chief was insufficient to support a finding by the jury of his guilt beyond a reasonable doubt of criminal possession of a firearm. Instead, he argues that the evidence presented prior to the reopening of the state's case was insufficient and claims, for the first time on appeal, that the court improperly permitted the state to present Hemming's testimony before ruling on his motion for a judgment of acquittal in contravention of Practice Book § 42-41.[6] That claim never was raised before the trial court and, hence, is unpreserved. The defendant has not sought review of that unpreserved claim pursuant to either the plain error doctrine; Practice Book § 60-5; or *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). To review a claim articulated for the first time on appeal and not raised before the trial court amounts to a trial by ambuscade of the trial judge. *State* v. *Robinson*, 227 Conn. 711, 741, 631 A.2d 288 (1993). We therefore decline to afford review on this unpreserved ground. Viewing the state's case-in-chief as a whole, the jury could have reasonably concluded, from the facts established and the reasonable inferences that could be drawn therefrom, that the cumulative effect was to

---

[6] Practice Book § 42-41 provides: "If the motion [for a judgment of acquittal] is made after the close of the prosecution's case in chief, the judicial authority shall either grant or deny the motion before calling upon the defendant to present the defendant's case in chief. If the motion is not granted, the defendant may offer evidence without having reserved the right to do so."

establish the defendant's guilt beyond a reasonable doubt.

### III

The defendant's final claim is that, in permitting the state to reopen its case and present additional evidence as to an essential element of the crime of criminal possession of a firearm, the court violated the prohibition against double jeopardy.[7] The defendant did not preserve this claim at trial and now seeks *Golding* review. We review the defendant's claim because the record is adequate for review and the claim is of constitutional magnitude. See *State* v. *Chicano*, 216 Conn. 699, 704–705, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991).

The double jeopardy clause of the fifth amendment to the United States constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." That constitutional provision is applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The double jeopardy prohibition "serves three separate functions: (1) It protects against a second prosecution for the same offense after acquittal. [2] It protects against a second prosecution for the same offense after conviction. [3] And it protects against multiple punishments for the same offense [in a single trial]." (Internal quotation marks omitted.) *State* v. *Chicano*, supra, 216 Conn. 706.

In his brief analysis of this constitutional claim, the defendant argues simply that "since [his] motion [for

---

[7] Interestingly, the defendant in *State* v. *Allen*, supra, 205 Conn. 370, originally raised a double jeopardy claim. As our Supreme Court observed: "Although the defendant claimed in his brief that the denial of his motion for judgment of acquittal implicated the prohibition against double jeopardy, he conceded at oral argument before us that the entire issue was better analyzed as a claim of an abuse of discretion." Id., 375.

a judgment of acquittal] should have been granted, allowing the state to present new evidence that established the missing element in its successive case-in-chief amounted to a successive prosecution for the same offense and violated the defendant's double jeopardy protections." That protection, however, "applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." *Richardson* v. *United States*, 468 U.S. 317, 325, 104 S. Ct. 3081, 82 L. Ed. 2d 242 (1984). The jeopardy that attached upon commencement of the defendant's trial did not terminate when the court granted the state's motion to reopen its case-in-chief pursuant to Practice Book § 42-35 (3).

The defendant's claim hinges on his allegation that the motion for acquittal was improperly denied. When it is found that a motion for a judgment of acquittal must be granted, be it by trial or appellate court, further prosecution is prohibited. See *State* v. *Padua*, 273 Conn. 138, 178, 869 A.2d 192 (2005) ("[p]ursuant to *Burks* v. *United States*, 437 U.S. 1, 18, 98 S. Ct. 2141, 57 L. Ed. 2d 1 [1978], a defendant is entitled to a judgment of acquittal and retrial is barred [under the double jeopardy clause] if an appellate court determines that the evidence is insufficient to support the conviction"). We already have concluded that the state in its case-in-chief presented sufficient evidence to support a finding by the jury of the defendant's guilt beyond a reasonable doubt of criminal possession of a firearm, and, thus, the court properly denied the defendant's motion for a judgment of acquittal. Accordingly, his double jeopardy claim fails under *Golding*'s third prong.

The judgment is affirmed.

In this opinion DiPENTIMA, J., concurred.

LAVERY, J., dissenting in part. Practice Book § 42–40 provides in relevant part that "[a]fter the close of the prosecution's case in chief . . . upon motion of the defendant . . . the judicial authority shall order the entry of a judgment of acquittal as to any principal offense charged and as to any lesser included offense for which the evidence would not reasonably permit a finding of guilty. . . ." In this case, after the state rested, the defendant, Noel Mendoza, immediately moved for a judgment of acquittal, stating that the state had not presented "evidence sufficient to support [the case] going to the jurors." Because the state failed to offer any evidence in its case-in-chief regarding the defendant's convicted felon status, an essential element of the crime charged, and because the defendant complied with applicable rules of practice, the trial court abused its discretion in granting the state's motion to reopen its case. Accordingly, I respectfully dissent from part I of the majority opinion.

Our Supreme Court has held that prejudice warranting the reversal of a trial court's decision to grant the state's motion to reopen has occurred "when the state was allowed to introduce further testimony in order to cure its failure to introduce, during its case-in-chief, any evidence upon an essential element of the crime charged, a deficiency called to its attention by the defendant's motion for a directed judgment of acquittal." *Wood* v. *Bridgeport*, 216 Conn. 604, 606–607, 583 A.2d 124 (1990), citing *State* v. *Allen*, 205 Conn. 370, 533 A.2d 559 (1987). On the basis of this premise, and for the following reasons, I believe the court abused its discretion in granting the state's motion to reopen immediately following the defendant's motion for a judgment of acquittal.

In determining whether, in these circumstances, the court abused its discretion in allowing the state to reopen its case-in-chief, it is important to consider that

the "state, which has the burden to prove every element of the crimes charged beyond a reasonable doubt, is required to present enough evidence so that a jury could reasonably find the defendant guilty; failing such an evidentiary showing, it risks a successful motion for judgment of acquittal. . . . In *United States* v. *Hinderman,* [625 F.2d 994, 996 (10th Cir. 1980)] the court warned that the 'government's case-in-chief should not be treated as an experiment that can be cured after the defendant has, by motion, identified the failures.' The California Supreme Court has recognized that 'to require a defendant to state specific grounds in support of the motion for acquittal would place the burden upon him to point out to the prosecutor, as well as to the court, the gaps in the prosecution's case.[1] Such a requirement would come perilously close to compelling a defendant to aid in his own prosecution and would lessen the prosecutor's burden to prove each and every element of the case beyond a reasonable doubt.' *People* v. *Belton,* 23 Cal. 3d 516, 522, 591 P.2d 485, 153 Cal. Rptr. 195 (1979)." (Citation omitted.) *State* v. *Allen,* supra, 205 Conn. 379–80.

In this case, the state in its case-in-chief offered the testimony of police officers, witnesses and a forensic firearm examiner, as well as two dozen exhibits into evidence. At no time during its case-in-chief, however, did the state offer any evidence regarding the defendant's convicted felon status. Only after the defendant filed a motion for a judgment of acquittal, and the court subsequently granted the state's motion to reopen, did the state then offer the new testimony of a deputy clerk of the Superior Court as evidence that the defendant had been convicted of a prior felony.

---

[1] It also is clear that the plain language of Practice Book § 42–40 does not require such specificity when the defendant makes a motion for a judgment of acquittal.

In *State* v. *Allen*, supra, 205 Conn. 383, the state failed to offer any evidence on the length of the barrel of the pistol at issue, an essential element of the crime charged, and the defendant moved for a judgment of acquittal at the close of the state's case, claiming that the evidence was insufficient on that element. Subsequently, the state moved to reopen its case to present evidence on the length of the barrel of the firearm. After the court granted the state's motion to reopen, the state offered new evidence and did not merely offer cumulative evidence or clarify previous testimony. Those facts strengthened our Supreme Court's conclusion that "allowing the state to reopen its case-in-chief after the defendant has identified its shortcomings was fundamentally unfair to the defendant and an abuse of the trial court's discretion." Id., 383–84.

Although, as the majority points out, the holding in *Allen* is narrow—the court concluded that the trial court abused its discretion in permitting the state to reopen its case to supply missing evidence because the defendant had *specifically* identified the evidentiary gap in his motion for a judgment of acquittal—the law does not require such a specific evidentiary identification when a defendant moves for a judgment of acquittal. Id., 385. Thus, I believe the state's offering of new evidence after the state rested and failed to make out a prima facie case, and after the defendant pointed out that the state had not presented "evidence sufficient to support [the case] going to the jurors," constitutes a fundamental unfairness to the defendant. Because I believe the defendant was substantially prejudiced by the court's granting of the state's motion to reopen, I find that the court abused its discretion.

The state had the burden to prove every element of the crime charged beyond a reasonable doubt and failed to do so. In fact, the state concedes that it failed to make out a prima facie case because it offered no evidence of

the felony conviction element of the charged offense. Additionally, no stipulation was entered into regarding this evidentiary gap. In turn, after the state rested, the defendant followed the rules of practice and appropriately moved for a judgment of acquittal due to insufficient evidence.

Furthermore, had the defendant remained silent until after the verdict had been returned, the omission of this evidence would have required, under the constitution, a judgment of acquittal either in the trial court or on appeal. See id., 377. Having brought to the attention of the state the fact that insufficient evidence existed, the defendant effectively was victimized by his own diligence, as the state used the reopening of its case to supply the missing element of the crime, thus assuring the defendant's conviction. See id., 378.

After reviewing the relevant motion to reopen case law, the only case factually similar to the present matter is *Allen*. The facts in *Allen* are analogous except that in this case, after the state failed to establish a prima facie case, the defendant called the deficiency to the state's attention by stating that insufficient evidence exists to support the case going to the jury. Although the defendant did not specifically notify the state as to what essential element of the crime the state had failed to prove, such specificity, as mentioned previously, is not required. In my opinion, allowing the state to reopen its case-in-chief, after the defendant has identified its shortcomings and complied with the rules of practice and the law, fundamentally is unfair to the defendant. See id., 383–84. The majority is permitting the defendant to be effectively victimized, as the state used the reopening of its case to supply evidence of an essential missing element of the crime. See id., 378. Consequently, I believe the trial court abused its discretion in granting the state's motion to reopen.

Accordingly, I respectfully dissent from part I of the majority opinion, and I would reverse the judgment of conviction with respect to the charge of criminal possession of a firearm and remand the case to the trial court with direction to render judgment of acquittal as to that charge. I concur in the remainder of the opinion.